---

**SO ORDERED,**



*[signature]*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **IN RE: WILLIAM SKELTON** | **CASE NO.: 20-10636-SDM** |
| **DEBTOR(S).** | **CHAPTER 13** |

**MEMORANDUM OPINION ADDRESSING DEBTOR'S**
**MOTION TO AVOID JUDGMENT LIEN (DKT. #23)**

**THIS CAUSE** comes before the Court on the Debtor's *Motion to Avoid Judgment Lien* (Dkt. #23) and the *Response* (Dkt. #29) thereto. On August 11, 2020, the Court heard oral arguments from the parties before taking the matter under advisement. The Court is now prepared to rule.

**I. JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), and (K) (determinations of the validity, extent, and priority of liens).

## II. FACTS AND PROCEDURAL HISTORY

The Debtor is William Skelton ("Skelton"), who filed a petition for Chapter 13 bankruptcy on February 12, 2020. On April 29, 2020, Skelton filed the instant *Motion to Avoid a Judgment Lien* ("the Motion") against Creditor Strategic Funding Source, Inc. ("SFSI"). SFSI had previously obtained a judgment in the amount of $52,630.51 plus 6% interest against Skelton and properly recorded it on the judgment roll in Winston County, Mississippi, Skelton's home county. By its terms, the recorded lien attaches to all current and future property owned by Skelton in Winston County.[1]

Skelton asserts that his homestead ("the Property"), a 2.40 acre lot with a house located in Winston County, is not owned by him in fee simple but rather by him and his wife as a tenancy by the entirety with full rights of survivorship and not as tenants in common.[2] Skelton argues that because SFSI only has a judgment against him but not against his spouse, the judgment lien should be avoided completely as to the Property, which is owned by the marriage as an independent entity rather than Skelton in his individual capacity.

On May 26, 2020, SFSI filed its *Response* to the Motion. The Response does not address any of the issues surrounding the Property's present status as a tenancy by the entirety. Instead, after relating the history of the lien and the conduct by Skelton which led to its creation, SFSI noted that the lien attached to any present *and future* property owned by Skelton in Winston

---

[1] The procedure for enrolling a judgment under Mississippi law is governed by Miss. Code Ann. § 11-7-189. The mechanism whereby enrolled judgments attach to "all the property of the defendant within the county where so enrolled" is governed by Miss. Code Ann. § 11-7-91.

[2] The warranty deed evincing the Property's tenancy by the entirety status was not included as an exhibit during the August 11, 2020 hearing due to a purported error by Debtor's counsel in uploading it electronically as an exhibit. However, on August 18, 2020, Skelton filed amendments to Schedules A and C (Dkt. #44) that identified the Property as a tenancy by the entirety. That status was confirmed by the warranty deed which was added to the court record on September 4, 2020, as an exhibit to the Debtor's *Amended Motion to Avoid Judicial Lien* (Dkt. #45).

County. Accordingly, SFSI argues, it is premature to extinguish its lien when it is unclear whether Skelton will receive a discharge at all, let alone whether he will be able to discharge the debt owed to SFSI.[3] Finally, SFSI also argued that if the Property is a true tenancy by the entirety, the lien may not have attached to it and thus the lien is not subject to avoidance anyway.

There are no factual disputes in the matter presently before the Court. Skelton does not dispute that SFSI obtained a valid and enforceable lien against him that has attached to any present or future property owned by him in Winston County. While SFSI initially questioned whether the Property at issue is a true tenancy by the entirety, that issue has been resolved in Skelton's favor by his late submission of the actual warranty deed into the court record. *See* Dkt. #45. Thus, the Court turns its attention to the legal analysis of the specific matter before it.

### III. DISCUSSION

Regarding motions to avoid judicial liens, 11 U.S.C. § 522(f)(1)[4] states in relevant part:

Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--

(A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5) . . . .

11 U.S.C. § 522(f)(1). Thus, the questions the Court must consider before ruling on the Motion are:

1. Is there a valid lien attached to the Property?
2. Does that lien impair an exemption to which Skelton is entitled?
3. Should the lien be avoided even though future circumstances may destroy the tenancy by the entirety?

---

[3] The judicial lien in question is presently the subject of an adversary proceeding to determine dischargeability in Adversary Case No. 20-01026. All issues regarding the nondischargeability of the loan are reserved for that adversary proceeding.

[4] Except where stated otherwise, all statutory references are to Title 11 of the U.S. Code.

The Court will address each of these questions in turn.

**A.     Is There A Valid Lien Attached To The Property?**

The gravamen of Skelton's argument for avoiding SFSI's lien lies in the fact that the Property is held as a tenancy by the entirety with full right of survivorship, a subset of joint tenancy that is limited to married couples and designed to provide special protections to the surviving spouse in the event of the death of the other. Mississippi has long recognized the estate of tenancy by the entirety as a valid and statutorily protected species of real property. *In re Pace*, 521 B.R. 124 (Bankr. N.D. Miss. 2014)(citing Miss. Code Ann. § 89-1-7). As Judge Samson held in *In re Dixon*:

> Mississippi law clearly states that in an estate by entirety, each spouse simultaneously is seised of the whole estate, that is title, interest and possession, and the Mississippi Supreme Court has emphasized that no action taken by one of the two tenants in entirety can terminate the rights of the other to the full panoply of rights in the estate.

*In re Dixon*, No. 10-51214-KMS, slip op. at 12 (Bankr. S.D. Miss., March 31, 2011). The *Dixon* court further noted that Mississippi law treats property held under a tenancy by the entirety as if it were not actually owned by the individual spouses jointly, but rather by "a third, fictional corporate entity consisting of the combined legal personals of the husband and wife." *Id.* at 10. In *Pace*, Judge Woodard held that any non-exempt equity in such an estate "may be administered only to the extent of the *joint* claims against the Debtors." *Pace*, 521 B.R. at 133.

While a tenancy by the entirety is a creature of state law (whether statutory or common law) and the precedential value of non-Mississippi law is thus somewhat limited, this appears to be the majority rule among jurisdictions where tenancies by the entirety are recognized. *See generally In re Locust*, 2005 WL 1288616 (Bankr. M.D. N.C., Feb. 2, 2005)("[T]he individual

creditors of either the husband or wife cannot reach entireties property in order to satisfy a judgment against only one of the spouses.")

However, that does not fully answer the question of whether or not the lien attached to the Property in the first place, and there is disagreement on whether such attachment to an entirety property can occur at all where only one of the two spouses is subject to the lien. In *In re Locust*, for example, Judge Wooten reasoned that:

> the judgment referred to in the motion does not constitute a judicial lien against Debtor's homestead since such homestead is owned as a tenancy by the entirety and the judgment is against the Debtor alone. Hence, there is no judicial lien to avoid and no grounds for relief under § 522(f)(1)(A).

*Id. (citing In re Hamilton*, 286 F.R. 291, 293 (Bankr. D. N.J. 2002)("Where a judgment has not become a lien on any of the debtor's property at the filing of the bankruptcy petition, Section 522(f) cannot apply.")).

Other courts have noted that even if a tenancy by the entirety is protected against liens that apply to only one spouse, any lien which, by its terms, covers all present *and future* property interests of the debtor may attach to the debtor's contingent future interest in the entirety estate. *See Davis v. Carrington,* 2019 WL 4090224, slip copy at 3 (N.D. Indiana, Aug. 28, 2019). That is, a debtor who is seised of a tenancy by the entirety may see that property interest alter in the future in response to changing circumstances. For example, if the debtor's spouse dies, the debtor will obtain a 100% free-and-clear ownership of the entirety property, but if the debtor dies first, the surviving non-debtor spouse will claim 100% ownership of it instead with nothing going to the debtor's creditors after his death. Likewise, if the entirety property were sold, the sale proceeds would be divided equally between the Skeltons with the Debtor's half subject to the lien.

In an interesting peculiarity of Mississippi law, if the Skeltons were to divorce, a property settlement agreement or divorce decree *might* require the Property to be conveyed to one spouse

or the other in fee simple, but absent such an agreement or judicial order, the right of survivorship (and thus, presumably, protection from SFSI's lien) would be preserved even after the divorce. *Shepherd v. Shepherd*, 336 So. 2d 497, 499 (Miss. 1976)(holding that, upon divorce, spouses holding property as tenants by the entirety become joint tenants with right of survivorship and not tenants in common absent clear intention otherwise).[5]

In the instant case, SFSI argues that, regardless of whether its lien can attach to Skelton's entirety homestead, it can still attach to his contingent future interest in possibly gaining ownership of the Property at some point under another form of title. While this appears to be a question of open law both in this jurisdiction and under Mississippi law, the Court, for purposes of this opinion, assumes that Skelton has, at the very least, a contingent future interest[6] in the Property in addition to the interest which he shares with his spouse.

Because a property interest of some kind exists, it follows that SFSI's lien can attach to it even though the Property's current entirety status precludes SFSI from exercising its rights against Skelton and the Property. And so, the Court must turn to the question of whether that valid lien is subject to avoidance.

**B.      Does That Lien Impair An Exemption To Which Skelton Is Entitled?**

---

[5]The Mississippi Supreme Court's position as announced in *Shepherd* represents the minority rule, and most states and also common law would hold that a divorce converts a tenancy by the entirety into a tenancy in common instead. *Ayers v. Petro*, 417 So. 2d 912, 914 n.2 (Miss. 1982). *See also Matter of Estate of Childress*, 588 So. 2d 192, 196 (Miss. 1991)(noting that *Shepherd* "reveals a very protected and guarded position for the right of survivorship").

[6]In fact, the Court believes that Skelton may well have a *present* interest in the Property despite its tenancy by the entirety status. While the Property remains a tenancy by the entirety, neither SFSI nor any other lienholder may seek to administer the Property for debts not owed by Skelton's spouse regardless of whether a lien solely against him is valid. *In re Pace*, 521 B.R. at 133. Skelton may therefore have a present interest in the Property insofar as its entirety status protects it from seizure by his creditors so long as his spouse is alive and not a party to the underlying debt. Regardless, the Court is of the firm conviction that Skelton has *some* interest in the Property sufficient to bring it within the ambit of § 522(f)(1)(A).

As noted previously, the Bankruptcy Code permits a debtor to avoid the fixing of a lien (such as the one held by SFSI) on any interest in property to the extent it impairs an exemption to which the debtor would otherwise have been entitled. Furthermore, a debtor may exempt any interest in a tenancy by the entirety that he possessed prior to the filing of the petition "to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law." 11 U.S.C. § 522(b)(3)(B). Property held exempt under § 522 is immunized against liability for prebankruptcy debts, subject only to a few exceptions: (1) debt from certain taxes and customs duties, (2) debt related to domestic support obligations, (3) liens that cannot be avoided or voided, including tax liens, and (4) debts for a breach of fiduciary duty to a federal depository institution. *In re Cunningham*, 513 F.3d 318, 323 (1st Cir. 2008)(citing § 522(c)(1-3)). None of those exceptions are relevant in this case.

In *Dixon*, Judge Samson concluded that applicable Mississippi law acted to exempt entirety properties in situations where only one of two spouses was a debtor who asserted the exemption. *Dixon,* slip op. at 12. While *Dixon* considered the matter in the context of whether an individual Chapter 13 debtor could apply the exemption during a liquidation analysis prior to confirmation, this Court sees no reason why the outcome should differ in a § 522(b)(3)(B) analysis. Thus, the Court concludes that Skelton does have an interest in the Property which is subject to an exemption that would be impaired if SFSI's lien remained in place.

**C.    Should The Lien Be Avoided Even Though Future Circumstances May Destroy The Tenancy By The Entirety?**

Finally, SFSI argues that changing future circumstances may cause the tenancy by the entirety to be transformed into some other form of property interest to which the exemption does not apply, such as in the case of a divorce, a sale, or the death of Skelton's spouse. This argument, however, conflicts with nearly a century of bankruptcy jurisprudence. As early as 1924, the U.S.

Supreme Court held that exemptions in bankruptcy cases are fixed at the time of the filing of the petition, stating that:

> [w]hen the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed. The provisions before cited show-some expressly and others impliedly-that one common point of time is intended and that it is the date of the filing of the petition. The bankrupt's right to control and dispose of the estate terminates as of that time, save only as to 'property which is exempt.' Section 70a. The exception, as its words and the context show, is not of property which would or might be exempt if some condition not performed were performed, but of property to which there is under the state law a present right of exemption-one which withdraws the property from levy and sale under judicial process.

*White v. Stump*, 266 U.S. 310, 313 (1924).

In contemporary bankruptcy jargon, this principle is often referred to as "the snapshot doctrine" (referring to a metaphorical snapshot photograph of the debtor's estate taken at the instant of filing), which stands for the principle that "exemptions are determined as of the date of a case filing" and "[d]evelopments which occur after filing should not impact on the entitlement to an exemption properly claimed at filing." *In re Snowden*, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008). *See also In re Cyr*, 605 B.R. 784, 796 (Bankr. W.D. Tex. 2019)("[U]under the snap-shot rule, the Petition Date is the operative date in determining whether a homestead is exempt . . . ."); *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012)("Under the so-called "snapshot" rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition."); *In re Cunningham*, 513 F.3d at 324 ("[I]t is a basic principle of bankruptcy law that exemptions are determined when a petition is filed.") *But see In re Frost*, 744 F.3d 384, 386 (5th Cir. 2014)(acknowledging "snapshot

rule" but holding that it did not shield proceeds from sale of exempt homestead where proceeds were not reinvested in new homestead within six months as required by Texas exemption statute).[7]

> The Supreme Court has stated that "a central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). The Bankruptcy Code facilitates a fresh start, in part, by allowing property properly exempted under § 522 to be immunized against liability for pre-petition debts. *See Owen,* 500 U.S. at 309, 111 S.Ct. 1833.

*In re Cunningham*, 513 F.3d at 324 (holding that, for "the fresh start policy" to be effective, there would have to be finality in matters pertaining to exemptions under § 522(c)). Applying the snapshot rule to the case sub judice, the Court concludes that any future changes to the status of Skelton's entirety homestead during the pendency of his Chapter 13 case will not affect the applicability of his claimed exemption.

---

[7]*Frost* is part of a line of Fifth Circuit cases which address the snapshot doctrine in the context of Tex. Prop. Code Ann. § 41.001(c)("The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale"). *See In re Montemayor*, 547 B.R. 684 (2016) for further discussion of *Frost* and related cases, all of which interpret § 41.001(c) to hold that proceeds from the sale of a homestead property are exempt but only if used to purchase a new homestead within six months after the sale and that failure to do so renders any such proceeds still in the Debtor's possession as non-exempt and subject to turnover. Ironically, in *In re Montemayor* itself, the court distinguished all those cases and granted summary judgment to the debtor because, *inter alia*, the case under review was a Chapter 7 case rather than a Chapter 13 case, a discharge had already been granted, and the trustee did not timely object to the exemption nor to discharge. 547 B.R. at 716-717. Other circuits have criticized the Fifth Circuit's reasoning in *Frost* and its companion cases due to their failure to consider § 41.001(c) in light of the Bankruptcy Code's "fresh start principles." *In re Rockwell*, 968 F.3d 12, 23 (1st Cir. 2020). *See also In re Golden*, 582 B.R. 803, 813 (Bank. D. Colo. 2015). In any event, all of these Fifth Circuit cases turn on a peculiarity of Texas property law which is absent from Mississippi law and thus irrelevant to the case *sub judice*. *See* Miss. Code. Ann. § 85-3-21 (setting out general homestead exemption statute without any temporal limitations) *and* § 85-3-49 ("The exempt property, real or personal, disposed of by the owner, shall not by disposal become liable to the debts of the owner; and any debtor leaving this state may take with him his personal property which is exempt from execution.")

However, that conclusion does not entirely foreclose the possibility of future relief for SFSI under its lien. Section 349 of the Code states in relevant part that "[u]nless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . . reinstates any lien voided under section 506(d) of this title." Likewise, § 522(c) states that exempted property is not liable during or after the case "[u]nless the case is dismissed." *In re Cunningham*, 513 F.3d at 324 (1st Cir. 2008)(noting that because debtor's bankruptcy case was not dismissed but fully adjudicated instead, debtor's exemptions remained valid post-discharge).

In other words, while the Court is inclined to grant Skelton's motion to avoid SFSI's judicial lien to the extent it attaches to the tenancy by the entirety, that avoidance is conditioned on Skelton actually obtaining a discharge. If his case is dismissed before reaching that point, SFSI's avoided judicial lien would be reinstated. Consequently, the Court concludes that the best approach in this instance is to grant the Motion but only conditionally. That is, the Court will enter an order granting the Motion, but the lien shall remain recorded until such time as a discharge is granted, at which time the Order shall be recorded on the Winston County judgment roll along with the Order of Discharge.

### IV. CONCLUSION

The Debtor's *Motion to Avoid Judgment Lien* (Dkt. #23) is conditionally GRANTED, subject to the proviso that he sees his Chapter 13 plan to its conclusion and obtains a discharge. A separate Order to that effect shall issue this day. Upon discharge, SFSI's judicial lien shall be avoided. At that time, a copy of both the Order of Discharge and the Order accompanying this Memorandum Opinion shall be attached to the judgment roll in Winston County, Mississippi to confirm that the lien has been avoided as to the Property to the extent the claimed exemption is impaired.